1

2

3

4

5

6

7

8

9

10          **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13   KHALID LANIER,                                   CASE NO. CV F 10-1120 LJO SKO

14                    Plaintiff,                      **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                                                      **MOTION TO DISMISS**
15            vs.                                     (Doc. 24.)

16   CITY OF FRESNO, et al,

17                    Defendants.
     _____/
18

19                              **INTRODUCTION**

20          Defendants County of Fresno ("County"), City of Fresno ("City") and two City police officers[1]

21   seek to dismiss plaintiff Khalid Lanier's ("Mr. Lanier's") excessive force, deliberate indifference for

22   medical care, and *Monell* claims as time barred and lacking sufficient facts.  Mr. Lanier responds that

23   defendants' challenges to his claims lack merit in that the claims are sufficiently pled.  This Court

24   considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant

25   to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES Mr. Lanier's claims

26   subject to defendants' motion to dismiss.

27   _____

28          [1]    The defendant City police officers are Alfonso Castillo ("Officer Castillo") and Stephen Taylor ("Officer
     Taylor").  The County, City and Officers Castillo and Taylor will be referred to collectively as "defendants."

                                            1

1          **BACKGROUND**[2]

2          During the late afternoon of June 20, 2008, Mr. Lanier, who is black, drove on a Fresno freeway

3   a sedan which he did not know had been stolen by his girlfriend and passenger, Carol Schumann ("Ms.

4   Schumann").  Mr. Lanier became aware of a police siren to pull him over.  Ms. Schumann informed Mr.

5   Lanier that she had stolen the car and possessed a firearm.  Mr. Lanier exited the freeway and drove near

6   a retirement home where he parked.

7          Mr. Lanier remained in the car and placed his arms visibly atop the steering wheel to surrender

8   peaceably.  Officers Castillo and Taylor's squad car headed to the front driver's side of Mr. Lanier's car

9   at a high rate of speed.[3]  Mr. Lanier perceived that Officers Castillo and Taylor intended to drive the

10  squad car directly into Mr. Lanier.  Mr. Lanier fled from his vehicle to avoid the squad car's crashing

11  into the driver's side of Mr. Lanier's car.

12         Officer Castillo followed Mr. Lanier into the retirement home where Mr. Lanier attempted to

13  surrender in a small unoccupied cafeteria.  Officer Castillo shot Mr. Lanier in the back multiple times

14  with Officer Castillo's 10 mm handgun although Mr. Lanier posed no threat of death or serious physical

15  harm to anyone and lacked a weapon.

16         Officers Castillo and Taylor moved Mr. Lanier from the air conditioned retirement home to an

17  outdoor courtyard where Mr. Lanier was subjected to "suffocating heat" in excess of 100 degrees and

18  improperly treated for his "obvious critical condition."[4]

19         While under arrest and in custody, Mr. Lanier underwent surgery at Fresno Community Medical

20  Center for gunshot wounds, damage to his liver, spleen and rib cage, and other injuries and was

21  prematurely discharged "after about seven days despite being in critical condition."

22         Mr. Lanier was incarcerated during December 2008 to his February 10, 2010 release.

23  _____

24         [2]      The factual recitation is derived generally from Mr. Lanier's operative First Amended Complaint for
    Damages ("FAC"), the target of defendants' challenges.
25
         [3]      The FAC fails to identify whether Officer Castillo or Officer Taylor was the squad car driver.  Mr. Lanier's
26  opposition papers indicate that Officer Castillo was the driver in that they accuse Officer Taylor of "failure to intercede to
    stop Castillo from ramming Mr. Lanier's vehicle."
27
         [4]      In his opposition papers, Mr. Lanier claims that Officers Castillo and Taylor "dragged Plaintiff across the
28  floor and out of the air-conditioned building into an adjacent outdoors courtyard."

1

**Mr. Lanier's Government Claim**

2       Pursuant to the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et

3    seq., Mr. Lanier submitted his December 17, 2008 claim ("government claim") to the City to allege:

4    "Officer Castillo did not comply with his training and used excessive force."  On January 27, 2009, the

5    City mailed to Mr. Lanier at the Fresno County Jail its notice of the same date to reject Mr. Lanier's

6    claim.

7

**Mr. Lanier's Claims In This Action**

8       The FAC accuses Doe Defendant City police and County Sheriff's Department personnel to have

9    obtained Mr. Lanier's premature hospital discharge.  The FAC alleges that the City and County engaged

10   in "deliberate acts, reckless conduct, and negligence in failing to train, supervise, discipline and/or

11   investigate complaints and/or other charges" against City and County peace officers.  The FAC alleges

12   a City custom and policy "to use excessive force against citizens" evidenced by the City Police

13   Department's "failure to train, supervise, discipline and/or investigate complaints and/or charges"

14   against City police officers "who had a known propensity for violence and excessive force and for

15   violating the constitutional rights of citizens."

16      As discussed in greater detail below, the FAC alleges claims under 42 U.S.C. § 1983 ("section

17   1983") for Fourth and Fourteenth Amendment violations and California tort and statutory claims.  The

18   FAC seeks recovery for Mr. Lanier's physical injuries, medical expenses, lost earnings, pain, emotional

19   distress and attorney fees as well as punitive damages.

20

**DISCUSSION**

21

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

22      Defendants seek to dismiss portions of the FAC's claims as insufficiently pled factually and

23   legally.

24      A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

25   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

26   of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

27   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

28   support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

3

1  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

2  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

3  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

4  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

5       In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

6  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

7  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

8  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

9  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

10 *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

11 "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

12 *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can

13 prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

14 been alleged."  *Associated General Contractors of California, Inc. v. California State Council of*

15 *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

16 "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon*

17 *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

18       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

19 allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

20 than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

21 *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

22 Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

23 plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing*

24 *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either

25 direct or inferential allegations respecting all the material elements necessary to sustain recovery under

26 some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

27 *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

28       In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

4

explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

With these standards in mind, this Court turns to defendants' challenges to Mr. Lanier's claims.

5

**Excessive Force As To Officer Taylor**

The FAC's first section 1983 claim alleges that Officers Castillo and Taylor used excessive force on Mr. Lanier to violate the Fourth Amendment.  Defendants challenge the absence of facts to support a Fourth Amendment excessive force claim against Officer Taylor.

### *Section 1983 Requirements*

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright*, 510 U.S. at 271, 114 S.Ct. 807, 811 (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

### *Direct Participation*

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or

6

omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.  Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

### *Fourth Amendment Seizure*

Defendants fault the FAC's failure to allege facts that Officer Taylor intentionally applied force upon Mr. Lanier to invoke a Fourth Amendment excessive force claim.  "[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

Defendants point to FAC allegations that Officer Castillo, not Officer Taylor, pursued Mr. Lanier

7

when Mr. Lanier fled to the retirement home and that Officer Castillo shot Mr. Lanier. Defendants further note that the FAC concedes that Mr. Lanier drove a stolen vehicle when it was struck by Officers Castillo and Taylor's squad car. Defendants conclude that the FAC's "conclusory allegations lack reference to any specific instances of intentionally applied and/or excessive force" of Officer Taylor.

In response, Mr. Lanier initially focuses on the ramming of Mr. Lanier's vehicle and argues that "Officer Taylor may be held liable for this use of excessive force regardless of whether he was driving or was a passenger, because both he and Officer Castillo were in the squad car and may reasonably be presumed to have jointly decided to precipitate a high speed car crash." Mr. Lanier holds Officer Taylor to have "interceded" to stop Officer Castillo "from unnecessarily ramming their squad car into Plaintiff's vehicle" and "from shooting Plaintiff in the back although he was not threatening anyone." Mr. Lanier characterizes Officer Taylor's failures as "culpable conduct."

To support his failure to intercede theory, Mr. Lanier relies on a footnote in *U.S. v. Koon*, 34 F.3d 1416, 1447, n. 25 (9th Cir. 1994), *rev'd in part and aff'd in party on other grounds*, 518 U.S. 81 (1996):

> There is another route to police officer liability under the civil rights statutes for injuries perpetrated by third persons. Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. . . . In these cases, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows. Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights. (Citations omitted.)

Mr. Lanier fails to mention that such discussion arose in context of Ninth Circuit Court of Appeals' recognition that "a person in official custody has a right to be free from harm inflicted by third persons, and that an official who willfully subjects a custodial subject to a deprivation of that right is subject to criminal liability." *Koon*, 34 F.3d 1416.

Mr. Lanier does not allege "injuries perpetrated by third persons" who are not peace officers. Moreover, the inferences from the FAC indicate there is little Officer Taylor could do to intercede since the squad car traveled, using the FAC's words, "at a high rate of speed," and Officer Castillo, not Officer Taylor, pursued Mr. Lanier into the retirement home. No facts are alleged or even apparent that Officer Taylor was in a position to intercede. "To state a claim for failure to intervene, Plaintiff must allege circumstances showing that these officers had an opportunity to intervene and prevent or curtail the

1  violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so."

2  *Gonzales v. Cate*, 2010 WL 3749236, *3 (E.D. Cal.,2010) (citing *Robins v. Meecham*, 60 F.3d 1436,

3  1442 (9th Cir.1995)).

4      In an attempt to salvage a Fourth Amendment claim against Officer Taylor, Mr. Lanier claims

5  "both Taylor and Castillo literally dragged him across the floor of the air-conditioned room where he

6  had been shot multiple times in the back, and then dragged him outdoors into the courtyard where the

7  temperatures were at or exceeding 100 degrees." Mr. Lanier attributes such dragging as a "separate" act

8  of excessive force but cites no applicable authority to support such claim.

9      The FAC lacks allegations of direct force applied by Officer Taylor to Mr. Lanier to support

10 excessive force. Defendants raise a valid point that the FAC alleges that Officer Castillo was the

11 shooter. As to ramming Mr. Lanier's car, Mr. Lanier concedes that Officer Castillo was the squad car

12 driver. The FAC lacks an actual connection or link between Officer Taylor's actions and alleged

13 excessive force applied to Mr. Lanier.

14              **Deliberate Indifference As To Officers Castillo And Taylor**

15     The FAC's first section 1983 claim alleges that Officers Castillo and Taylor were deliberately

16 indifferent to Mr. Lanier's medical care to violate the Fourteenth Amendment. Defendants attack a

17 deliberate indifference claim against Officers Castillo and Taylor based on Mr. Lanier's alleged

18 premature hospital discharge. Mr. Lanier supports his deliberate indifference claim based on Officers

19 Castillo and Taylor's dragging "their critically injured prisoner across the room and outside into a

20 courtyard with 100 degree or greater temperatures."

21     A pretrial detainee's claim of failure to provide care for serious medical needs is analyzed under

22 the substantive due process clause of the Fourteenth Amendment. *Simmons v. Navajo County, Az.*, 609

23 F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. County of Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003); *see*

24 *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct.

25 872 (2003). "With regard to medical needs, the due process clause imposes, at a minimum, the same

26 duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have

27 officials remain deliberately indifferent to their serious medical needs.'" *Gibson*, 290 F.3d at 1187

28 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)). "Under the Eighth Amendment's standard

1  of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person

2  'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson*, 290 F.3d at 1187

3  (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

4          The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical

5  need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant

6  injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need

7  was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v.

8  Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*,

9  104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

10         Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain

11 or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*,

12 974 F.2d at 1060). Deliberate indifference may be manifested when officials "deny, delay or

13 intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (citing *McGuckin* 974 F.2d at 1060

14 (internal quotations omitted)).

15         "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th

16 Cir. 2004). Indifference to "medical needs must be substantial.  Mere 'indifference,' 'negligence,' or

17 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d

18 458, 460 (9th Cir. 1980).  Under the deliberate indifference standard, "the official must both be aware

19 of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

20 must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.  "But if a person is aware of

21 a substantial risk of serious harm, a person may be liable for neglecting a [detainee's] serious medical

22 needs on the basis of either his action or his inaction." *Gibson*, 290 F.3d at 1188 (alteration in original).

23 "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need

24 in order for deliberate indifference to be established."  *McGuckin*, 974 F.2d at 1060.

25         Defendants fault the FAC's lack of facts that Officers Castillo and Taylor "were subjectively

26 aware of a substantial risk of harm to plaintiff as a result of his discharge from the hospital or that they

27 disregarded said risk."  Defendants further challenge the absence of specific allegations of Officer

28 Castillo and Taylor's "direct knowledge of or authority over his medical care and/or discharge from the

1   hospital." Defendants further attack the FAC's failure to allege Mr. Lanier's injury from his premature

2   discharge and a causal connection between his injury and discharge.

3       Defendants raise valid points regarding the absence of Officers Castillo and Taylor's direct

4   involvement after Mr. Lanier's hospital admission. The FAC lacks allegations that Officers Castillo and

5   Taylor were charged with determination whether to release Mr. Lanier. The focus of the FAC as to

6   Officers Castillo and Taylor's medical attention is their actions directly after Mr. Lanier's shooting.

7       Turning to such actions, Mr. Lanier points to his critical gunshot injuries and being dragged into

8   100-degree heat to constitute "an act of further violence intended to further harm the victim." On the

9   other hand, defendants point to the FAC's inference that Mr. Lanier received "prompt medical care" in

10  that he was taken to the hospital. Defendants note that the "factual allegations demonstrate Officers

11  Castillo and Taylor never denied of delayed plaintiff's medical treatment on scene." As to events prior

12  to Mr. Lanier's hospitalization, the FAC alleges that Officers Castillo and Taylor "failed to provide

13  necessary and appropriate medical care and instead negligently and with deliberate indifference to the

14  obvious critical condition of Plaintiff moved Plaintiff outside the air-conditioned confines of the

15  unoccupied cafeteria into an adjacent outdoors courtyard where Plaintiff was subjected to suffocating

16  heat in excess of 100 degrees." As such, the inferences of the FAC's allegations are that Mr. Lanier's

17  serious medical need was treatment for his gunshot wounds to which Officers Castillo and Lanier

18  responded by moving him outside into severe heat. Defendants equate such conduct as "mere

19  negligence" which is "insufficient for liability" under the deliberate indifference standard. *See Clement*

20  *v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

21      The FAC does not allege that Officers Castillo and Taylor failed to respond to Mr. Lanier's

22  gunshot injuries. The FAC gives rise to inferences that Officers Castillo and Taylor summoned medical

23  attention to respond to his injuries. The FAC conclusory allegations fail to support Officer Castillo and

24  Taylor's purported deliberate indifference, even assuming as true that they dragged Mr. Lanier into the

25  heat. There are no allegations that Officers Castillo and Taylor denied, delayed or interfered with Mr.

26  Lanier's medical treatment to warrant dismissal of a deliberate indifference claim as to them.

27                      **The City And County's *Monell* Liability**

28      The FAC's second 1983 claim accuses the City and County of "deliberate indifference" for

1  failure to:

2       1.    "[A]deqately train, instruct, monitor, supervise or otherwise direct its officers and
3            employees . . . concerning the rights of citizens"; and

4       2.    "[U]se adequate hiring procedures, thereby resulting in negligent and reckless hiring of
5            the individual defendants, including Defendants CASTILLO [and] Taylor."

6                    ***Deliberate Indifference To Serious Medical Needs***

7       Defendants fault the FAC's absence of an unconstitutional City or County "policy, practice or

8  custom that was the cause of the alleged deliberate indifference to plaintiff's serious medical needs in

9  violation of his Fourteenth Amendment rights." Mr. Lanier responds that "[d]iscovery will demonstrate

10  the degree of knowledge particular policy makers had when Plaintiff was prematurely discharged to

11  County Jail."

12       A local government unit may not be held liable for the acts of its employees under a respondeat

13  superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

14  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

15  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law

16  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

17  1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

18  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

19  result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

20       "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S.

21  at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation."

22  *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

23  (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its

24  employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

25  constitutional violation was the product of a policy or custom of the local governmental unit. *City of

26  Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

27  U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government,

28  a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

1    policymakers) and the requisite causation (the policy or custom as the "moving force" behind the

2    constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296

3    F.3d 531, 537 (7th Cir. 2002).

4         "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such

5    inaction amounts to a failure to protect constitutional rights.'"  *Lee v. City of Los Angeles*, 250 F.3d 668,

6    681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  A local government

7    entity may be liable under section 1983 "if its deliberate policy caused the constitutional violation

8    alleged."  *Blankenhorn*, 485 F.3d at 484.  However, "[l]iability for improper custom may not be

9    predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

10   frequency and consistency that the conduct has become a traditional method of carrying out policy."

11   *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1995), *cert. denied*, 520 U.S. 1117, 117 S.Ct. 1249 (1997).

12        A municipal policy or custom is established by showing: (1)"a longstanding practice or custom

13   which constitutes the 'standard operating procedure' of the local government entity;" (2) "that the

14   decision-making official was, as a matter of state law, a final policymaking authority whose edicts or

15   acts may fairly be said to represent official policy in the area of decision;" or (3) "that an official with

16   final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

17   *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-985 (9th Cir. 2002) (internal quotation

18   marks and citations omitted).

19        Nonetheless, "a public entity is not liable for § 1983 damages under a policy that can cause

20   constitutional deprivations, when . . . an individual officer, acting pursuant to the policy, inflicted no

21   constitutional harm to the plaintiff."  *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).

22   "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact

23   that the departmental regulations might have authorized the use of constitutionally excessive force is

24   quite beside the point."  *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 1573 (1986).

25        Defendants point to the absence of deliberate indifference to Mr. Lanier's serious medical need

26   on which to hold the City and County liable.  Defendants note the absence of allegations that any City

27   or County employee "had direct knowledge of or authority over [Mr. Lanier's] medical care and

28   subsequent discharge from the hospital."  Defendants note the FAC's failure to identify a policy, custom

13

1    or practice to result in Mr. Lanier's premature hospital discharge.

2        The FAC accuses Doe defendant City and County employees to have obtained "improperly" Mr.

3    Lanier's premature hospital discharge. The FAC fails to identify Mr. Lanier's continuing serious

4    medical need after his hospitalization and lacks facts that any City or County employee knew of Mr.

5    Lanier's continuing serious medical need after Mr. Lanier's hospitalization and treatment. The FAC

6    merely alleges Mr. Lanier's pre-hospitalization injuries and jumps to the conclusion, without supporting

7    facts, that Mr. Lanier was discharged prematurely. Mr. Lanier's reliance on what discovery may uncover

8    is unavailing. In the absence of a deliberate indifference claim, the FAC fails to establish *Monell*

9    liability based on a City or County policy or custom as to detainee medical care or hospital discharge.

10                                        ***Training***

11       Defendants characterize the FAC's failure to train allegations as an attempt "to circumvent the

12    prohibition of respondeat superior liability."

13       "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure

14    to train amounts to deliberate indifference to the rights of persons with whom the police come in

15    contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989). "Only where a

16    municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference'

17    to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom'

18    that is actionable under § 1983." *Harris*, 489 U.S. at 389, 109 S.Ct. 1197. Moreover, "it is therefore

19    difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate

20    training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice

21    – that is, proof that the policymakers deliberately chose a training program which would prove

22    inadequate. And in the second place, some limitation must be placed on establishing municipal liability

23    through policies that are not themselves unconstitutional . . ." *City of Oklahoma City v. Tuttle*, 471 U.S.

24    808, 823, 105 S.Ct. 2427 (1985).

25       The U.S. Supreme Court has elaborated on an inadequate training claim:

26            But it may happen that in light of the duties assigned to specific officers or employees
             the need for more or different training is so obvious, and the inadequacy so likely to
27           result in the violation of constitutional rights, that the policymakers of the city can
             reasonably be said to have been deliberately indifferent to the need. In that event, the
28           failure to provide proper training may fairly be said to represent a policy for which the

city is responsible, and for which the city may be held liable if it actually causes injury.

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Harris*, 489 U.S. at 390-391, 109 S.Ct. 1197 (footnotes omitted).

As to failure to train employees, the Ninth Circuit has explained:

> The custom or policy of inaction, however, must be the result of a "conscious," . . . or "'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"
>
> . . .
>
> A local governmental entity's failure to train its employees can also create § 1983 liability where the failure to train "amounts to deliberate indifference to the rights of persons" with whom those employees are likely to come into contact. . . . "[F]or liability to attach in this circumstance the identified deficiency in a [local governmental entity's] training program must be closely related to the ultimate injury." . . . In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees. . . .

*Lee*, 250 F.3d at 681 (citations omitted.)

A section 1983 plaintiff alleging a policy of failure to train peace officers must show: (1) he/she was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons' with whom its peace officers are likely to come into contact; and (3) his/her constitutional injury would have been avoided had the local government unit properly trained those officers. *Blankenhorn*, 485 F.3d at 463. "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant – a much lower standard of fault than deliberate indifference.'" *Blankenhorn*, 485 F.3d at 484-485 (quoting *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir. 1994)).

In short, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391, 109 S.Ct. 1197.

The FAC broadly alleges deliberate indifference to train peace officers "concerning rights of citizens."  The FAC lacks factual allegations of deliberate indifference, that is, a conscious choice to

15

1  pursue an inadequate training program.  The FAC fails to allege facts to demonstrate an obvious need

2  for more or different training.  At best, the FAC raises inferences that individual officers may have been

3  inadequately trained. The FAC does not even allege that Mr. Lanier's injuries would have been avoided

4  had different training been employed.  A section 1983 failure to adequately train claim is insufficiently

5  pled to warrant dismissal, especially given the absence of Mr. Lanier's meaningful opposition to attempt

6  to support an inadequate training claim.

7  *Hiring*

8  The FAC references the City and County's deliberate indifference as to its "hiring procedures."

9  In *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382

10  (1997), the U.S. Supreme Court explained "deliberate indifference" in hiring:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to
> the risk that a violation of a particular constitutional or statutory right will follow the
> decision. Only where adequate scrutiny of an applicant's background would lead a
> reasonable policymaker to conclude that the **plainly obvious consequence** of the
> decision to hire the applicant would be the **deprivation of a third party's federally
> protected right** can the official's failure to adequately scrutinize the applicant's
> background constitute "deliberate indifference."  (Bold added.)

15  Thus, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability

16  and must demonstrate a direct causal link between the municipal action and the deprivation of federal

17  rights." *Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382.  As such, a "lawful hiring decision can launch a

18  series of events that ultimately cause a violation of federal rights. Where a plaintiff claims that the

19  municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so,

20  rigorous standards of culpability and causation must be applied to ensure that the municipality is not held

21  liable solely for the actions of its employee."  *Brown*, 520 U.S. at 405, 117 S.Ct. 1382.

22  In *Brown*, 520 U.S. at 415, 117 S.Ct. 1382, the U.S. Supreme Court highlighted:

> Cases involving constitutional injuries allegedly traceable to an ill-considered hiring
> decision pose the greatest risk that a municipality will be held liable for an injury that it
> did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where
> a court fails to adhere to rigorous requirements of culpability and causation, municipal
> liability collapses into respondeat superior liability. As we recognized in *Monell* and have
> repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless
> deliberate action attributable to the municipality directly caused a deprivation of federal
> rights. A failure to apply stringent culpability and causation requirements raises serious
> federalism concerns, in that it risks constitutionalizing particular hiring requirements that
> States have themselves elected not to impose.

16

1    The FAC makes a conclusory reference to inadequate hiring but lacks facts which even give rise

2    to an inference of inadequate hiring. There are no allegations of the City or County's deliberate hiring

3    actions to cause directly a purported deprivation of federal rights. The FAC appears to reference

4    inadequate hiring to circumvent preclusion of respondeat superior liability under section 1983.

5        In sum, the FAC fails adequately to allege a deliberate indifference claim against the City and

6    County to warrant their dismissal.

7                                **Claims Act Requirements**

8        The FAC alleges against Officers Castillo and Taylor state law claims of battery, negligence and

9    violations of California Civil Code sections 51.7 ("section 51.7") and 52.1 ("section 52.1") (collectively

10   "state law claims"). Defendants contend that Officer Taylor is not subject to Mr. Lanier's government

11   claim to render state law claims against Officer Taylor beyond the scope of Mr. Lanier's  government

12   claim to bar the state law claims.

13       The Claims Act describes the specific steps which must be taken before a civil action for money

14   or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316,

15   146 Cal.Rptr. 224 (1978). The Claims Act requires timely filing of a proper claim as condition

16   precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written

17   claim to the applicable public entity is required before a "suit for money or damages may be brought

18   against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,

19   94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to

20   a cause of action for death or for injury to person . . . shall be presented . . . not later than six months

21   after the accrual of the cause of action. A claim relating to any other cause of action shall be presented

22   . . . not later than one year after the accrual of the cause of action."

23       The claims procedures applicable to actions against public entities are the same for actions

24   against public employees. Cal. Gov. Code, §§ 950-950.6. Compliance with the claims statutes is

25   mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim

26   is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409

27   (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation

28   requirement subjects a claim against a public entity to a demurrer [or dismissal] for failure to state a

cause of action." *State v. Superior Court*, 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th at 1243, 13 Cal.Rptr.3d at 534. "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against either the employee or the public entity." *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

California Government Code section 910 addresses the content of a government claim and requires the "date, place and other circumstances of the occurrence . . . which gave rise to the claim" and a "general description" of the "injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim." The Claims Act bars "actions alleging matters not included in the claim filed with the public entity." *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984). The California Court of Appeal has further explained:

> If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [or dismissal] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.

*Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434, 253 Cal.Rptr. 587 (1998) (brackets in original; citations omitted).

"Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984). "In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition." *Williams v. Braslow*, 179 Cal.App.3d 762, 770, 224 Cal.Rptr. 895 (1986).

A leading California practice guide provides that "the claimant is not barred from asserting additional legal theories or further details to the facts alleged in the claim, as long as the complaint is predicated on the same fundamental actions or failures to act by the persons and at the times specified in the claim." Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (2010) Prelawsuit Considerations, para. 1:702, p. 1-156.6. In addition, each "theory of recovery" must be reflected in a

18

1    timely claim, and "the factual circumstances set forth in the claim must correspond with the facts alleged

2    in the complaint." *Munoz v. State of California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).

3         The California claims statutes are designed to protect governmental agencies from stale and

4    fraudulent claims, to provide an opportunity for timely investigation, and to encourage settling

5    meritorious claims. *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697, 266 Cal.Rptr.

6    187 (1990). Since the claims statutes should not be used as traps for the unwary when their underlying

7    purposes have been satisfied, courts employ a test of substantial compliance, rather than strict

8    compliance, in determining whether the plaintiff has met the filing requirements of the Tort Claims Act.

9    *Johnson*, 217 Cal.App.3d at 697, 266 Cal.Rptr. 187.

10        Nonetheless, substantial compliance doctrine "cannot cure total omission of an essential element

11   from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Loehr v. Ventura*

12   *County Community College Dist.,* 147 Cal.App.3d 1071, 1083, 195 Cal.Rptr. 576 (1983). "The test for

13   substantial compliance is whether the face of the filed claim discloses sufficient information to enable

14   the public entity to make an adequate investigation of the claim's merits and settle it without the expense

15   of litigation." *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38, 52 Cal.Rptr.3d 720 (1988).

16        Defendants argue that the state law claims against Officer Taylor are barred since Mr. Lanier's

17   government claim fails "to provide any factual allegations or information regarding these claims."

18   Defendants point to government claim inconsistencies that he was a passenger in the stolen car which

19   struck a sign and remained in the car at the time of collision. The FAC alleges that Mr. Lanier doreve

20   and parked the car and exited it before the collision. Defendants contend that the government claim's

21   "most glaring" omission is absence of allegations against Officer Taylor and unknown City police

22   officers.

23        Mr. Lanier responds that "naming all public employees who caused an injury in the course and

24   scope of their employment is not a prerequisite to maintaining an action against that employee, if the

25   claim was timely presented to the public entity." Mr. Lanier relies on *Olden v. Hatchell*, 154 Cal.App.3d

26   1032, 1034, 201 Cal.Rptr. 715 (1984), where the California Court of Appeal explained:

27        Pursuant to Government Code section 945.6, a suit against a public entity on a cause of
          action for which a claim is required to be filed must be commenced within six months
28        of service of notice of rejection of the claim. Presentation of a claim against a public

                                                        19

1
2
3
4

> employee or former public employee for injury resulting from an act or omission in the scope of his public employment is not a prerequisite to the maintenance of an action against the employee, but presentation of a claim against the employing public entity is a prerequisite to bringing such an action. ( §§ 911.2, 945.4, 950, 950.2.) Section 945.6 requires an action against the employee to be commenced within the time prescribed for bringing an action against the public entity. ( §§ 950.2, 950.6.)

5   Mr. Lainer points out that his government claim states "the factual basis for this lawsuit: the ramming
6   of his vehicle, foot chase and shooting, and dragging his wounded body."

7          Mr. Lanier appears to take refuge in that his government claim need not mention Officer Taylor
8   by name.  However, the government claim references only Officer Castillo's conduct and fails to apprise
9   that Officer Taylor's conduct is at issue.  The government claim references only "Officer Castillo and
10  the Fresno Police Department" and fails even to raise an inference to Office Taylor's action or inaction.
11  Mr. Lanier misplaces reliance on knowing only Officer Castillo's name at the time of his government
12  claim in that the government claim could have referred to a second unnamed officer but did not.  As to
13  Officer Taylor, Mr. Lanier fails to establish substantial compliance with Claims Act filing requirements
14  to warrant dismissal of the state law claims against Officer Taylor.

15                              **Battery As To Officer Taylor**

16         The FAC's (third) battery claim alleges that Officers Castillo and Taylor "intentionally caused
17  offensive contact with Plaintiff's person" to which Mr. Lanier did not consent.

18         Defendants fault the FAC's absence of allegations that Officer Taylor "intentionally touched or
19  applied force" to Mr. Lanier.  Relying on a jury instruction, defendants hold Mr. Lanier to allege that:

20         1.      Officer Taylor intentionally touched Mr. Lanier;

21         2.      Officer Taylor used unreasonable force to overcome Mr. Lanier's resistance;

22         3.      Mr. Lanier did not consent to Officer Taylor's use of force;

23         4.      Mr. Lanier was harmed; and

24         5.      Officer Taylor's use of unreasonable force was a substantial factor in causing Mr.
25                 Lanier's injuries.

26  *See* Judicial Council of California, Civil Jury Instructions (2010), CACI No. 1305.

27         Police officers are not "similarly situated to the ordinary battery defendant and need not be
28  treated the same."  *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1109, 16 Cal.Rptr.3d 521

                                              20

1  (2004).  In a battery action against a peace officer the plaintiff "must prove unreasonable force as an

2  element of the tort." *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272, 74 Cal.Rptr.2d 614 (1998).

3  "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome

4  resistance, and need not desist in the face of resistance."  *Edson*, 63 Cal.App.4th at 1272-1273, 74

5  Cal.Rptr.2d 614 (citing Cal. Pen. Code, § 835a)).  A "prima facie battery is not established unless and

6  until plaintiff proves unreasonable force was used." *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614.

7  Peace officers "act under color of law to protect the public interest. They are charged with acting

8  affirmatively and using force as part of their duties, because 'the right to make an arrest or investigatory

9  stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect

10  it.'"  *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614 (quoting *Graham v. Connor,* 490 U.S. 386,

11  396, 109 S.Ct. 1865, 1871-1872 (1989)).

12      Defendants point to the FAC allegations that Officer Castillo, not Officer Taylor, pursued Mr.

13  Lanier into the retirement home and shot Mr. Lanier.  Defendants note the absence of FAC allegations

14  that Officer Taylor intentionally touched Mr. Lanier or applied force during his arrest or when moving

15  Mr. Lanier out of the retirement home.  Defendants further point to the failure of Mr. Lanier's

16  government claim to identify Officer Taylor in that it references Officer Castillo alone.

17      Mr. Lanier argues that "[u]nder the circumstances," Officer Taylor's dragging Mr. Lanier's

18  wounded body constituted offensive touching.

19      Defendants are correct that the FAC lacks sufficient facts to support a battery claim against

20  Officer Taylor as a police officer.  No facts demonstrate that Officer Taylor applied unreasonable force.

21  Mr. Lanier's attempt to equate peace officer battery to common law battery is unpersuasive and

22  unsupported by the FAC's alleged facts to warrant dismissal of the battery claim against Officer Taylor.

23                    **Negligence As To Officer Taylor**

24      The FAC's (fourth) negligence claim alleges that Officers Castillo and Taylor owed "a duty of

25  care to avoid causing unnecessary physical harm and distress to other persons" and "used violent and

26  excessive force" against Mr. Lanier.

27      Defendants challenge the FAC's failure to allege facts that Officer Taylor "owed plaintiff a duty

28  to use due care or that he breached said duty."

1    The elements of negligence are (a) a legal duty to use due care; (b) a breach of such legal duty;

2    and (c) the breach was the proximate or legal cause of the resulting injury.  *Ladd v. County of San*

3    *Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996).  "Liability for negligent conduct may only be

4    imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the

5    plaintiff is a member."  *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979).  A duty

6    to the plaintiff is an essential element, which "may be imposed by law, be assumed by the defendant,

7    or exist by virtue of a special relationship."  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 985,

8    25 Cal.Rptr.2d 550 (1993).  The existence of a duty is a question of law.  *Marlene F. v. Affiliated*

9    *Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

10    Similar to their challenge to the battery claim, defendants again point to FAC allegations that

11    Officer Castillo, not Officer Taylor, pursued Mr. Lanier into the retirement home and shot Mr. Lanier.

12    Defendants continue that Officer Taylor was entitled "to effectuate an arrest" using "some degree of

13    physical coercion or threat thereof."  As to medical treatment, defendants point to the FAC's concession

14    that Officers Castillo and Taylor treated Mr. Lanier who was later transported to the hospital.  Turning

15    to colliding with Mr. Lanier's vehicle, defendants point to FAC allegations that Mr. Lanier was neither

16    in his vehicle nor injured at the time of the collision.  Defendants note the absence of Officer Taylor's

17    "realistic opportunity to intervene or prevent plaintiff's shooting or the ramming of the suspect vehicle."

18    Mr. Lanier responds that the ramming of his vehicle resulted in his fleeing and being shot and

19    that "the dragging of a critically wounded body across a floor and outside a building caused additional

20    severe physical distress."

21    The FAC fails to allege a cognizable duty which Officer Taylor breached to support a negligence

22    claim against him. The FAC merely refers to a duty "to avoid causing unnecessary physical harm and

23    distress" but lacks facts that Officer Taylor failed to observe such duty.  In his opposition papers, Mr.

24    Lanier fails to identify facts or legal authority to substantiate negligence elements.  The negligence claim

25    against Officer Taylor is subject to dismissal.

26    **Section 51.7**

27    The FAC's (fifth) claim alleges that Officers Castillo and Taylor "used violence and intimidation

28    by the threat of violence against Plaintiff because of his race or ethnicity" to violate section 51.7.

1    Defendants challenge the FAC's absence of facts that Officer Castillo and Taylor's "actions were

2  motivated by intentional discrimination against plaintiff because of his race."

3    Section 51.7(a) provides:

4        All persons within the jurisdiction of this state have the right to be free from any
         violence, or intimidation by threat of violence, committed against their persons or
5        property because of political affiliation, or on account of any characteristic listed or
         defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because
6        another person perceives them to have one or more of those characteristics. The
         identification in this subdivision of particular bases of discrimination is illustrative rather
7        than restrictive.

8  California Civil Code section 51(e)(5) identifies "race, color" among protected characteristics.  As such,

9  section 51.7 provides a civil remedy for hate crimes.  *Ramirez v. Wong*, 188 Cal.App.4th 1480, 1486,

10  116 Cal.Rptr.3d 412 (2010).

11    Relying on a jury instruction, defendants hold Mr. Lanier to allege that:

12    1.    Officers Castillo and Taylor committed a violent act against Mr. Lanier or his property;

13    2.    The motivating reason for Officers Castillo and Taylor's conduct was their perception

14        of Mr. Lainer's race/color;

15    3.    Mr. Lanier was harmed; and

16    4.    Officer Castillo and Taylor's conduct was a substantial factor in causing Mr. Lanier's

17        harm.

18  *See* Judicial Council of California, Civil Jury Instructions (2010), CACI No. 3023A.

19    Section 51.7 "requires violence or a threat of violence; it is, after all, a 'hate crimes' statute. . .

20  .There can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs

21  or their property, and there simply was none." *Ramirez*, 188 Cal.App.4th at 1486, 116 Cal.Rptr.3d 412.

22    Defendants point to the absence of FAC allegations that Officer Taylor used violence or

23  intimidation by threat of violence against Mr. Lanier in that Officer Castillo, not Officer Taylor, pursued

24  Mr. Lanier.  Defendants further note the lack of allegations that Mr. Lanier's race motivated Officer

25  Castillo's actions, especially given FAC concessions that Mr. Lanier drove a stolen vehicle from which

26  he fled.  Defendants focus on the FAC's conclusory allegation that Officers Castillo and Taylor acted

27  "because of his race or ethnicity" and point to the absence of facts of intentional discrimination or that

28  Officers Castillo and Taylor engaged in racially motivated remarks, jokes or stereotypes.

1    The FAC lacks facts that Officers Castillo or Taylor engaged in "violence, or intimidation by

2  threat of violence" based on Mr. Lanier's race.  Mr. Lanier offers no meaningful opposition to suggest

3  otherwise.  Defendants correctly note the absence of allegations that Officers Castillo and Taylor

4  engaged in racial remarks, slurs or conduct associated with Mr. Lanier's race to warrant dismissal of the

5  section 51.7 claim.  Mr. Lanier points to nothing to attempt to invigorate a section 51.7 claim.

6  **California's Bane Act**

7    The FAC's (sixth) claim alleges violation of California's Bane Act, section 52.1.  More

8  specifically, the section 52.1 claim alleges that Officers Castillo and Taylor "interfered with Plaintiff's

9  rights and privileges secured under the Fourth Amendment and Fourteenth Amendment to the United

10 States Constitution, and the laws of the State of California and the California Constitution."

11   Defendants fault the absence of facts to support a section 52.1 claim.

12   Section 52.1 permits a civil action against a person who interferes or attempts to interfere by

13 threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and

14 California Constitutions and laws.  The Bane Act and related statutes "are California's response to [the]

15 alarming increase in hate crimes."  *In re Joshua H.,* 13 Cal.App.4th 1734, 1748, fn. 9, 17 Cal.Rptr.2d

16 291 (1993).  Section 52.1 in intended to "stem a tide of hate crimes."  *Jones v. Kmart Corp.*, 17 Cal.4th

17 329, 338, 70 Cal.Rptr.2d 844 (1998).

18   "Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue

19 for damages as a result of constitutional violations."  *Reynolds v. County of San Diego*, 84 F.3d 1162,

20 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.

21 1997).  "The Bane Act is simply not a wrongful death provision. It clearly provides for a personal cause

22 of action for the victim of a hate crime."  *Bay Area Rapid Transit Dist. v. Superior Court,* 38

23 Cal.App.4th 141, 145, 44 Cal.Rptr.2d 887 (1995).  The Bane Act "is limited to plaintiffs who themselves

24 have been the subject of violence or threats."  *Bay Area Rapid Transit*, 38 Cal.App.4th at 145, 44

25 Cal.Rptr.2d 887.

26   Relying on a jury instruction, defendants hold Mr. Lanier to allege that:

27   1.    Officers Castillo and Taylor interfered with or attempted to interfere with Mr. Lanier's

28        constitutional or statutory rights by threatening or committing violent acts;

2.    Mr. Lanier reasonably believed that if he exercised his constitutional or statutory rights, Officers Castillo and Taylor would commit violence against Mr. Lanier, or Officers Castillo and Taylor injured Mr. Lanier to prevent him from exercising his constitutional or statutory rights or retaliated against Mr. Lanier for having exercised his constitutional or statutory rights;

3.    Mr. Lanier was harmed; and

4.    Officers Castillo and Taylor's conduct was a substantial factor in causing Mr. Lanier's harm.

*See* Judicial Council of California, Civil Jury Instructions (2010), CACI No. 3023A.

Defendants point to the absence of FAC facts that Officer Taylor committed violence, intimidation or coercion to violate Mr. Lanier's Fourth and Fourteenth Amendment rights in that Officer Castillo, not Officer Taylor, pursued and shot Mr. Lanier. Defendants argue that Officer Castillo, as a peace officer, was entitled to use reasonable force to make an arrest, prevent an escape or overcome resistance. Defendants note the FAC's absence of facts to support Mr. Lanier's reasonable belief that Officer Castillo acted intentionally to prevent Mr. Lanier's exercise of his constitutional or statutory rights.

To support his section 52.1 claim, Mr. Lanier relies on the ramming of his vehicle, shooting him when he posed no threat, and dragging his wounded body.

The FAC lacks facts that Officers Castillo and Taylor engaged in conduct commensurate with a hate crime. No allegations support that Officers Castillo and Taylor interfered or attempted to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. For a section 52.1 claim, the FAC alleges no more than Mr. Lanier's fleeing from a stolen car and Officer Castillo's pursuit and shooting. Mr. Lanier's claims of excessive force do not translate into a section 52.1 claim. The section 52.1 claim is subject to dismissal.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.    DISMISSES with prejudice the (first) section 1983 excessive force claim against Officer Taylor;

1      2.    DISMISSES with prejudice the (first) section 1983 deliberate indifference claim against

2          Officers Castillo and Taylor;

3      3.    DISMISSES with prejudice this action against the City and County, including the

4          (second) section 1983 claim;

5      4.    DISMISSES with prejudice the state law claims against Officer Taylor;

6      5.    DISMISSES with prejudice the (fifth) section 51.7 and (sixth) section 52.1 claims,

7          including those against Officer Castillo;

8      6.    ORDERS Officer Castillo, no later than December 27, 2010, to file and serve an answer

9          to the remaining (first) section 1983 excessive force claim against him;[5] and

10     7.    DIRECTS the clerk to enter judgment in favor of defendants City of Fresno, County of

11         Fresno and Officer Stephen Taylor and against plaintiff Khalid Lanier in that there is no

12         just reason to delay to enter such judgment given that Mr. Lanier's remaining claim

13         against Officer Castillo and Officer Castillo's alleged liability are clear and distinct from

14         the claims against and liability of the City, County and Officer Taylor.  *See* F.R.Civ.P.

15         54(b).

16     IT IS SO ORDERED.

17 **Dated:**   **December 8, 2010**          **/s/ Lawrence J. O'Neill**

                                  UNITED STATES DISTRICT JUDGE

---

[5]    Based on the dismissals, Mr. Lanier is limited to a remaining section 1983 excessive force claim against Officer Castillo.